SWAN et als. v. JOHN W. FINNEY, et als.

LIFE ESTATE. *Rights of tenant for life and remaindermen.* Where a mother received a life estate in her father's property, which was, after his death, sold under directions of the will, by the Chancery Court, for partition, and she purchased a specific part of the land, to the extent of her interest, no money actually being paid, it is held, that, though she may afterwards sell the same to a third party, who has notice of the proceedings by virtue of the Chancery Court records, upon the death of the mother, the children, who are entitled to the interest in remainder, may recover the same from such purchaser.

Case cited: Vaden v. Vaden, 1 Head, 444.

FROM FRANKLIN.

Appeal from the Chancery Court. A. S. MARKS, Chancellor.

BRANNAN & HUNT for Finney.

DAVIS for Swan.

FREEMAN, J., delivered the opinion of the Court.

This bill is filed by the children of E. D. Swan, and Matilda, his wife, the latter having been the daughter of Mary Covey, deceased; the children of Swan being the grand-children of said Mary. It is filed against John W. Finney, a son-in-law, who had purchased a tract of land of the said Mary, Dallas Covey, the administrator of said Mary, and her other heirs and distributees.

Swan *v.* Finney.

The object of the bill, and main matter of contest is, as to the title of a tract of land in the pleadings mentioned, being the same purchased by said Finney, above referred to.

The first question presented, is, what estate or interest the said Mary Covey took under the will of William Orear.

The clauses of the will are, in substance, as follows: By the second, he directs his lands shall be equally divided among his daughters and wife, if it can be done, so as to satisfy all parties; if this cannot be done, then it was to be sold, and the money divided equally among the above-named persons. He then directs a like division of his negroes in item 3rd.

Item 4th, however, is as follows: I give and bequeath one equal sixth part of all my estate, money, land and negroes, after the payment of my debts and special legacies, to each of my before-mentioned daughters, Sally Covey, wife of Jesse Covey, Polly Covey, wife of the late Abram Covey, Matilda Knight, wife of Wm. B. Knight, and Peggy Newman, wife of Isham Newman, during their natural lives, for their separate use and maintenance, and education of their children, and at their death, to be equally divided among the children then living, and issue of any child that may be dead, such issue to stand in the place of their deceased parents.

Item 7th is, all the property heretofore devised to my daughters, (naming them,) I hereby vest in my friend, Benjamin Decherd, as trustee, and desire that

any money which may be received under said devise from the sale of land, stock, etc., be put out at interest, or vested in property for their benefit, at the discretion of said trustee; but the said property is not to be consumed in the maintenance of my said children, nor are they to anticipate the same by contracting debts upon the faith thereof, but the profits of said property above, is to be used by them.

It is proper to say, that Polly Covey, as named in the will, we take to be Mary Covey, the grandmother of complainant.

Benjamin Decherd was appointed executor, with power to appoint trustees for the daughters in his stead, if he deemed advisable.

We have no doubt, in the first place, but that the daughters took only a life estate in the property devised. Second, that the trustee only took an estate in this property for the life of the daughters, the object of the trust being only to preserve and administer the property for the benefit of the daughters during their lives, according to the directions of the testator, and to prevent the *corpus* of the fund from being broken in upon, the income alone to be used for their maintenance, and education of their children. The children took a vested remainder in this property, and the limitation over to the issue, (meaning children,) of any one that might be dead at the falling in of the life estate, is good.

All this is clear, we think, and presents no difficulty. But a serious question is presented on another

aspect of the case. It appears that in 1851, probably, a bill was filed by Benjamin Decherd, executor, and a portion of the heirs of Orear, against the other parties in interest. In a decree made in that case, among other things, the land was ordered to be sold, because "it appeared to the Court they could not be divided, but must be sold to be distributed." This was done, and Mary Covey purchased a tract of land which, however, was agreed to be exchanged with Knight, the husband of one of the heirs, he having purchased the track now in controversy. This exchange was reported to the Court, and confirmed. The result of this was, that Mary Covey simply was substituted as purchaser to the latter tract, and we shall treat it as if she had been the original purchaser at the sale. Title was ultimately divested out of the other heirs, and vested in her absolutely—a deed also directed to be made her by the Clerk and Master, which was done. The decree or deed made in pursuance of it, recites that the purchase money had been settled. While it does not very clearly appear that payment was made by crediting the share of Mary Covey with this amount, yet we are satisfied the fact is that way, and shall so treat it.

The question then is, whether the heirs of Mary Covey, who were entitled in remainder, can claim this land, either by way of resulting or implied trust, because their interest in their grandfather's estate went into it and paid for it, thus treating it as an investment by the life tenant, of their money in land, or

whether they can, on the other hand; upon the facts stated, claim this land as part of the estate received by their mother from her father, and as such, theirs in remainder, on her death, she having died in 1872.

On the first hypothesis, that is, investment by a life tenant of money in which such party had only a life interest in lands, it is settled by authority, and probably on sound principle, that no trust results or is implied in favor of the parties having the remainder interest. The case of *Vaden, adm'r.* v. *Vaden, et als.,* 1 Head, 444, is decisive of the question against complainants. In that case, a negro woman was bought with money in which the party purchasing had only a life interest, and it was held, the remaindermen had no interest in the negro, but she belonged to the life tenant absolutely. That the remaindermen were only entitled to the *corpus* of the fund, after death of the life tenant, with a right, in the meantime, if it was endangered by the conduct of the life tenant, to have security for its forthcoming at the falling in of the life estate. It was further said, that, upon a bill showing the necessity for it, and danger of loss, the very property so purchased might be impounded, and be held or administered under the direction of the Court, as security for the fund. In that case, how-ever, the life tenant was still alive and perfectly solvent, therefore, no such relief was granted.

We think, however, the above principles should be confined strictly to the case in which they are laid down, or a case precisely similar, as not tending to

reach the justice of the case in some instances, and opening a door to the life tenant to appropriate the fund so as to defeat the rights of remaindermen, especially where the life tenant is a parent, having children remaindermen, under his influence if not control, and subject to parental sway. It would obviously be, at all times, a matter of serious delicacy for children to file a bill against a parent, in order to impound property in which they had a remainder interest, and in a large number of cases it would not be done, even though imperiled by the acts of the life tenant. With these views, we look to see whether, on the facts of the case, this property can be treated as property received by the mother from her father's estate, assuming it was obtained as we have said, it differs from the case in 1 Head, in the element, that, in fact, no money was given to the mother, nor held by her, nor invested really in the land. The land was ordered to be sold for division, so that each heir or devisee might receive her share. In purchasing it, it was but the ascertainment to this extent, of the share of Mary Covey, and practically, a receipt of so much of her father's bounty. Such, no doubt, was the thought of the parties at the time. This ought to have been here embodied in the decree vesting the title but it seems to have been made a number of years after the sale, and probably was overlooked, it may have been done by different attorneys from those who originated the proceeding—probably was so from the length of time between the two decrees—the first being

made in 1851, the last in 1867. Be this as it may, the fact that, on receiving this share of her father's estate, the title was wrongly vested in her, ought not to impair the rights of the remaindermen, who were not parties to the proceeding.

Finney, the purchaser from Mary Covey, can stand in no better position, as he does not claim to be an innocent purchaser, nor could he do so, as the face of the Chancery proceeding showed the facts we have given, and he no doubt had actual knowledge as to how the land was derived.

In this view of the case, complainants will be entitled to recover their proper share of the lands, or the proceeds of the same when sold, as is probably necessary in order to division. They would also be entitled to their share of rents in said land since the death of the life tenant, Finney being entitled to set off permanent improvements to the extent the property has been enhanced in value, and in proportion as the shares recovered have received such benefit. It appears, further, in the proof, that he probably, if not certainly, discharged a debt, to Edwards, we believe, which was a lien or charge on the land before the death of Orear, this being done for the benefit of the life tenant. He will be entitled to have this repaid, in proportion to the value of the remainder interest named, as compared with that of the life tenant, this being substituted to her place as to this debt, it having been a charge on both the life interest and the interest in remainder. We see nothing in

the other · questions presented, and the above disposes of the case practically. It can be remanded to take the accounts, and be further proceeded in to effectuate the rights of the parties under this opinion.'

The costs of this Court to be paid equally by complainants and defendant, Finney, and the same as to the Court below.